UTICA,
Aug. 1825

Russell
v.
Doty.

## Russell *against* Doty, Sheriff of Washington.

CASE upon the statute, (sess. 36, ch. 63, s. 12, 1 R. L.

The statute, (sess. 36, ch. 63, s. 12, 1 R. L. 437,) providing that goods shall not be removed by execution from the demised premises, till one year's rent paid, extends to all goods upon the premises, whether they belong to the tenant or any other person. The specific lien of the landlord on goods upon the premises for a year's rent is, under this statute, co-extensive with his right of distress, i. e. goods which he might distrain cannot be removed by execution till the year's rent be paid.

437,) for removing goods in execution, leaving the rent unpaid ; tried at the Washington circuit, June, 1822, before (the late) Mr. Justice YATES.

At the trial, it appeared that the plaintiff purchased the demised premises, which are situate in Salem, Washington county, at a sheriff's sale, upon a judgment and execution against James Nichols, and received a conveyance dated April 17th, 1819. The plaintiff then produced a lease of the premises from himself to Charles Nichols, dated April 24th, 1819, for one year, at a rent of $150, payble the 1st day of May after the date of the lease. A deputy of the defendant swore that he received an execution against James Nichols in the fall of 1819, by virtue whereof, he took and removed the goods in question, (value more than $150,) from a store on the demised premises, after having notice from the plaintiff that his rent was due ; and without first paying the rent. Charles and James Nichols were both in the store when the goods were taken. The latter built the store, and the former resided in Vermont ; but he continued the business of the store from the spring of 1819, having, that spring, purchased James' goods at a sheriff's sale upon an execution against James. James, since that time, had occupied a room in the back of the store, and was frequently in the store.

The plaintiff having here rested his cause, the defendant's counsel moved for a nonsuit, on the ground, 1. that the plaintiff could not make a lease till he was in possession ;

One need not be actually possessed of land, in order to be enabled to give a lease of it. The undisputed right of possession is enough ; as where one purchases land at sheriff's sale, and the defendant in the execution has not actually surrendered the possession ; yet the purchaser may give a valid lease to a third person, before acquiring possession by ejectment.

After a purchase of land on execution, if the defendant remains in possession, the presumption of law, as between the purchaser and all third persons, is, that he remains in possession s tenant of the purchaser, and in subordination to his title.

2. that the execution was not against the tenant, but James Nichols; 3. that the rent was not due in respect of occupancy, but merely in respect to the parties' agreement. The Court overruled the motion, and the defendant's counsel excepted.

A variety of testimony was then gone into, to show that the sale of James' property to Charles in the spring of 1819, was fraudulent and void as to creditors : After which,

The Judge intimated to the defendant's counsel, that the plaintiff was entitled to recover, if the questions of law had been correctly decided. The defendant's counsel declined going to the jury, who found for the plaintiff, $184 23, damages.

*J. Crary,* now moved for a new trial. He said, that by the purchase at the sheriff's sale, the plaintiff acquired a mere right of possession, and had no right to give a lease, without showing that he obtained actual possession. (*The People* v. *Brinkerhoff,* 13 John. Rep. 340.)

Beside, this is not a case within the statute. The defendant and tenant must be the same. This is evident from the provision, that the sheriff may levy not only the amount of the execution, but the rent also, and pay the whole to the plaintiff. The statute, (1 R. L. 437, s. 12,) never intended that the goods of a third person should be sold by the sheriff to pay the tenant's rent. The right of the sheriff to make the rent out of property on the demised premises was not intended to be as broad as the landlord's right of distress. It is the tenant's goods alone which the statute means. These were not his, but James'; and the lease was evidently a mere cover for the property. The statute does not extend beyond the landlord and his immediate lessee; and it was expressly held, in *Bennet's case,* (2 Str. 787,) that it does not protect the ground landlord against an execution upon the goods of a sub-lessee. (Woodf. L. & T. 566, S. C.)

The rent was not due within the meaning of the statute; and the landlord cannot claim unless it be due. (*Trappan* v. *Morie,* 18 John. Rep. 1.) *Buckley* v. *Taylor,* (2 T. R. 600,) went upon the custom of the country, that rent

UTICA,
Aug. 1825.

Russell
v.
Doty.

might be demanded in advance. As against creditors, the rent should always be due upon occupancy. A contrary rule would facilitate fraud.

*D. Russell*, contra. The question of fraud cannot be raised here. It belonged exclusively to the jury, before whom the gentleman shrunk from its investigation.

A voluntary entry, on a purchase at a sheriff's sale, is equivalent to a recovery in ejectment, and execution executed. The statute of uses carries the constructive, which, in this instance, was consummated by actual possession taken peaceably. After a purchase at sheriff's sale, the tenant is in under the purchaser.

The statute (1 R. L. 437, s. 12,) is general in its terms, and embraces all the property upon the premises demised. Had the legislature intended an execution against the lessee alone, they would have said so.

Rent may be made payable in advance. The gentleman shows no authority, proving that the time of payment is not under the control of the parties, as in other cases ; and *Williams* v. *Howard*, (3 Munf. 277,) is in point, that rent may be made payable in advance, by *contract*.

[On this point, he was stopped by the Court.]

The statute should be liberally and beneficially construed for the landlord. It was intended to give him a specific lien on the property against all executions to the extent of a year's rent, in every case where he may distrain (*Henchett* v. *Kimpson*, 2 Wils. 140. *Binns* v. *Hudson*, 5 Binn. 505, 6.)

*Curia*, per SUTHERLAND, J. It is not necessary that the owner of land should be in the actual possession of it, to enable him to give a valid lease. The undisputed right of possession, I apprehend, is sufficient. Here James Nichols has never questioned the plaintiff's right to give the lease. On the contrary, the evidence warrants the inference that Charles Nichols went into possession of the store with the assent of James, immediately after the purchase. James appears to have surrendered the possession

ot the store, and to have been permitted by the plaintiff to occupy a single room in the back part of it.

It is true that the plaintiff could not have obtained the possession of the premises against the will of James Nichols, without an action of ejectment. (13 John. 344.) But the tenant had a right voluntarily to surrender the possession. And I apprehend that, as between a purchaser of land at sheriff's sale and all third persons, if the defendant remains in possession after the sale, the presumption of law is, that he remains as the tenant of the purchaser, and in subordination to his title. It is not for strangers to say that he holds in hostility to the true owner.

Nor is it material, whether the property taken belonged to James Nichols, the defendant in the execution, or to Charles, the tenant of the plaintiff. The statute is express, *that no goods or chattels whatsoever*, in or upon the demised premises, shall be liable to be taken by virtue of any execution, &c. unless the party, at whose suit the execution is sued out, shall pay to the landlord of the premises, or his bailiff, all and every sum or sums of money due for rent, at the time of taking the goods or chattels by virtue of the execution ; not exceeding, however, one year's rent. Whether the statute would extend to property casually upon the premises, belonging to strangers, which the tenant did not claim to own, so as to protect it from execution, may perhaps be questionable. It certainly would not, if it appeared to have been placed there with the fraudulent intent of protecting it from execution, and the landlord was a party to the fraud. But where the property is claimed by the tenant, and is upon the premises in his actual possession, it is clearly, both by the letter and spirit of the act, protected from execution, until the rent is paid. The landlord had a right to look to, and rely upon it as security for his rent; and the legal presumption is, that he did rely upon it. He was not bound to inquire into the claims of third persons to the property. He had a right to distrain it ; and it would seem to have been the intention of the legislature to give the landlord a *specific lien*, co-extensive with his right of distress, to the amount of one year's rent. (Woodfall, 563.) No terms could have been

UTICA,
Aug. 1825.

Russell
v.
Doty.

used more comprehensive than those of the 12th section of our act, (1 R. L. 437 :) "*No goods or chattels whatso-ever, in or upon the demised premises, shall be liable to be taken by virtue of any execution;*" not an execution against the *tenant only*, but against any other person. The 13th and 14th sections of the act, which authorize the landlord to seize any goods which may have been removed from the premises, and impose a penalty on tenants and others removing goods, to defraud the landlord of his rent, are expressly confined to the *goods of the tenant*, and do not extend to any other goods which may be upon the premises.

In this case, therefore, I repeat, it is immaterial, whether the goods removed belonged to James or Charles Nichols. They ostensibly belonged to Charles. They were purchased by him at sheriff's sale, and had ever since the purchase been in his exclusive possession. There is no evidence that the sale was fraudulent and colorable. If the defendant intended to take that ground, he should have gone to the jury upon it. It was a question for them to decide. He voluntarily declined submitting the cause to the jury, thereby admitting that there were no facts in dispute, and that the whole merits of the case were embraced in the questions of law decided by the Judge, and to which be excepted. To those exceptions, therefore, he must now be confined. The property removed is, by the course of the trial, admitted to have belonged to the tenant.

But it is objected that the rent in this case was not due within the meaning of the statute.

It is well settled, that the landlord can claim from the party suing out the execution, or the sheriff, only the amount of the rent due at the time of the levy. The English Courts, as well as our own, have thus expounded the statute. (1 M. & S. 245. 18 John. 1.) The defendant contends that the rent must be due, in virtue of actual occupancy, and not in advance, in consequence of an agreement, in order to give the landlord a specific lien under the statute. Rent may be reserved in advance, so as to give the landlord either a right of action, or a right to dis-

train for it, immediately upon the tenant entering into possession. (Gilb. on Rents, 25. Woodfall, 238. 2 Bac. Ab. tit. *Distress*, (C). 2 T. R. 600. 6 Mod. 214.) The case of *Buckley* v. *Taylor*, (2 T. R. 600,) involved the very question whether rent payable in advance, either by contract or the custom of the country, was due within the 8 Ann. c. 14, which is like the 12th section of our act; and Erskine contended there, as it has been contended here, that the provisions of that statute only extended to rent which had become due in respect of the actual occupation of the tenant. But the Court held otherwise. Buller, Justice, says, " In general, the landlord cannot distrain till the rent becomes due, (that is, until the end of the year;) but if the agreement be otherwise, I see no objection to it in point of law. If the tenant take a lease, and agree that the rent shall be payable on a particular day, the law gives the landlord a power of distraining on that day." That rent, surely, must be due for which the landlord has a right to distrain; and there is nothing in the terms of the statute, or in the reason or nature of the case, from which it is to be inferred that the legislature intended to confine the specific lien given to landlords by the 12th section of the act, to rent which had become due by actual occupancy. It has always been held that this statute was to have a liberal construction. (Woodfall, 564. 2 Wils. 141. 5 Bin. 505.) I am therefore of opinion that the motion for a new trial must be denied.